UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TAMRA S. *o/b/o* ALICIA N. (Deceased),

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant

---

**DECISION AND ORDER**

1:25-CV-00199 CDH

## INTRODUCTION

Plaintiff Tamra S. ("Plaintiff") seeks review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") denying her deceased daughter Alicia N.'s ("Claimant") applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), pursuant to Titles II and XVI of the Social Security Act (the "Act") (Dkt. 1). Under Rules 5 through 8 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) and Local Rule of Civil Procedure 5.5(d), the matter has been presented for decision by the parties' filing of motions for judgment on the pleadings. (*See* Dkt. 11; Dkt. 14; Dkt. 16). For the reasons that follow, the Court grants the Commissioner's motion and denies Plaintiff's motion.

## BACKGROUND

On January 18, 2018, Claimant protectively filed applications for DIB and SSI.

(Dkt. 4 at 21, 103-104).[1] Her applications were initially denied on May 17, 2018. (*Id.* at 21, 127-33). Claimant requested a hearing before an administrative law judge ("ALJ") (*id.* at 21, 137-39), which was held on May 3, 2019 (*id.* at 42-102). On November 14, 2019, the ALJ issued an unfavorable decision. (*Id.* at 18-41). Claimant sought review from the Appeals Council, which denied her request on September 29, 2020. (*Id.* at 7-12).

Claimant brought an action in this District. (*See* Dkt. 5 at 135). Claimant died during the pendency of that action, and Plaintiff sought and was granted party substitution. (*Id.* at 135 n.1). On October 6, 2022, the Court entered a Decision and Order remanding the matter for further administrative proceedings. (*Id.* at 134-42). On remand, the Appeals Council "remand[ed] th[e] case to an Administrative Law Judge for further proceedings consistent with the order of the court." (*Id.* at 146).

The ALJ conducted an additional hearing on May 22, 2024. (*Id.* at 28-58). The ALJ issued an unfavorable decision on November 21, 2024. (*Id.* at 1-26). This action followed. (Dkt. 1).

## LEGAL STANDARD

### I. Administrative Determination of Disability

The Social Security Administration's ("SSA") regulations establish a five-step, sequential evaluation that an ALJ follows in determining whether a claimant is disabled within the meaning of the Act. *See Sczepanski v. Saul*, 946 F.3d 152, 156 (2d

[1] In referencing the administrative transcript, the Court has referred to the page numbers generated by CM/ECF and found in the upper right corner of the documents.

Cir. 2020); 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not, the ALJ continues to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" within the meaning of the Act if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.* §§ 404.1520(c), 416.920(c).

If the claimant has at least one severe impairment, the ALJ proceeds to step three. There, the ALJ determines whether the claimant's impairment or impairments meet or medically equal the criteria of the impairments listed in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant does not have an impairment that both meets or medically equals a Listing and satisfies the Act's durational requirement, *see id.* §§ 404.1509, 416.909, the ALJ must determine the claimant's residual functional capacity ("RFC"), *id.* §§ 404.1520(e), 416.920(e). "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see* 20 C.F.R. §§ 404.1545, 416.945.

At step four, the ALJ determines whether, in light of the RFC assessment, the claimant is capable of performing any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is unable to perform any past

relevant work, the ALJ proceeds to the fifth and last step. At this step, the burden shifts to the Commissioner to demonstrate that, taking into account the claimant's age, education, work experience, and RFC, the claimant is capable of performing substantial gainful work that exists in the national economy. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## II. Review by the Court

The Court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying an application for DIB or SSI. It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted). Instead, in performing its review, the Court is "limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian*, 708 F.3d at 417 (citation omitted). If the Commissioner's findings of fact are supported by substantial evidence, they are "conclusive." 42 U.S.C. § 405(g). In other words, "[i]f there is substantial evidence to support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

## DISCUSSION

### I. The ALJ's Decision

The ALJ applied the five-step, sequential evaluation described above in determining whether Claimant was disabled. Before proceeding to step one, the ALJ found that Claimant met the insured status requirements of the Act through March 31, 2016. (Dkt. 5 at 6).

The ALJ found at step one that Claimant had not engaged in substantial gainful activity since January 15, 2014, the alleged onset date. (*Id.*). The ALJ found at step two that Claimant had the following severe impairments: "pseudo-seizures; migraines; post-traumatic stress disorder (PTSD); mood disorder; anxiety disorder; panic disorder; degenerative disc disease (lumbar spine); kidney stones; and ovarian cysts[.]" (*Id.* at 7). The ALJ further concluded that Claimant had the non-severe impairments of "gastroesophageal reflux disease (GERD), colitis, right wrist ganglion cyst, degenerative joint disease of the right hip and history of opiate dependence." (*Id.*).

The ALJ found at step three that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of any of the Listings. (*Id.* at 7-8). At step three, the ALJ specifically discussed the criteria of Listings 1.15, 6.00, 11.02, 12.04, 12.06, 12.07, 12.08, 12.15, and 13.23. (*Id.* at 8-10).

The ALJ assessed Claimant's RFC and determined that Claimant retained the ability to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the additional limitations that Claimant could:

> frequently stoop; occasionally crouch and crawl; occasionally reach overhead; never be exposed to extreme temperatures, unprotected heights, machinery with external moving parts, large bodies of water, sharp instruments or cutting tools; and never drive for work-related tasks. . . . [C]laimant can perform work with few and infrequent changes to task; can have brief, superficial interaction with coworkers and supervisors (defined as 3-5 minutes of interaction at the beginning of the day, after lunch, and to receive a list of work assignments but no requirement to interact with coworkers in order to perform job duties); never perform team or tandem tasks; and never work with the general public.

(*Id.* at 10). The ALJ then proceeded to step four and found that Claimant had no past relevant work. (*Id.* at 19).

The ALJ found at step five that—considering Claimant's age, education, work experience, and RFC—there were jobs that exist in significant numbers in the national economy that Claimant could perform. (*Id.* at 19-20). The ALJ ultimately concluded that Claimant was not disabled, as defined in the Act, from January 15, 2014, through the date of the ALJ's decision. (*Id.* at 20).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Legal Error

Plaintiff argues that this matter should be remanded because the ALJ "fail[ed] to follow this Court's prior Decision and Order, and the Appeals Council's remand order" because "she failed to properly reconcile the opinion of [consultative examiner] Dr. [Russell] Lee with the RFC finding." (Dkt. 11-1 at 1). The Court is unpersuaded by this argument, for the reasons that follow.

In adjudicating a disability application, an ALJ must consider and weigh the evidence of record, including medical opinions. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also* 20 C.F.R. § 404.1520c(b) ("We will articulate in our

determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record.").

The Commissioner's regulations set forth the following factors that the ALJ considers when assessing the persuasiveness of a medical opinion: (1) supportability, meaning that, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be"; (2) consistency, meaning that, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be"; (3) relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and whether the relationship included a physical examination; (4) specialization, meaning that the opinion of a specialist "may be more persuasive about medical issues related to his or her area of specialty" than the opinion of a non-specialist; and (5) "other factors that tend to support or contradict a medical opinion," which includes but is not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the most important factors and must be discussed in the ALJ's decision. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, explain how he or she considered the other factors. *Id.*

Dr. Lee examined Claimant on April 10, 2018. (Dkt. 4 at 1252-56). He concluded that Claimant had "moderate limitations for activities involving prolonged standing, prolonged sitting, climbing stairs, bending, and lifting." (*Id.* at 1256). Dr. Lee further opined that Claimant should "avoid bright lights and other known migraine triggers." (*Id.*).

In her original decision, the ALJ provided only a cursory analysis of Dr. Lee's opinion, stating:

> I find the opinion of the examining consultant Dr. Lee persuasive in some respects and not persuasive in other respects. He assessed that the claimant had moderate limitations but did not provide an assessment with vocationally helpful precise functional limitations. However, although the overall evidence supports only mild findings regarding the claimant's physical issues of degenerative joint disease of the hip, degenerative disc disease of the back, migraines, and pseudoseizures, viewing the evidence in the light most favorable to the claimant, I have limited her to work at the light exertional level, with additional postural and environmental limitations as described.

(*Id.* at 34). In its prior Decision and Order, the Court found that the ALJ had committed legal error in assessing Dr. Lee's opinion, because the ALJ "did not identify which parts of Dr. Lee's opinion were found to be persuasive and which were not persuasive and failed to discuss the supportability or consistency factors in the brief three sentence analysis of the decision." (Dkt. 5 at 141).

On remand, the ALJ reassessed Dr. Lee's opinion. The ALJ explained that Dr. Lee had not "express[ed] his opinion in clear functional terms," but that the walking, standing, and postural limitations he had identified were "supported by his contemporaneous exam findings" and consistent with the demands of the light work. (*Id.* at 17-18). The ALJ noted that Claimant had intact gait, strength, and sensation,

and was able to "rise from a chair without difficulty and get on and off the exam table without issue." (*Id*. at 18). The ALJ further explained that Dr. Lee's opinion was supported by Claimant's own reports that she enjoyed activities such as watching television, reading, and crocheting, and consistent with Claimant's primary care records, which documented "largely conservative care for pain" and Claimant's ability to carry her grandchild in a car seat. (*Id*.).

As to Dr. Lee's opinion regarding Claimant's avoidance of migraine triggers, the ALJ found this portion of the opinion unpersuasive, explaining that Dr. Lee had not "provide[d] specific limitations to account for . . . [C]laimant's migraines despite the reported frequency of same" and had not "indicate[d] how . . . [C]laimant's seizures impact her functioning, although his postural restrictions could account for this condition." (*Id*.). The ALJ determined that a more precise and restrictive limitation was "necessary and . . . more consistent with the longitudinal evidence." (*Id*.).

Plaintiff contends that the ALJ failed to comply with the Court's and the Appeals Council's directives, because "the ALJ again failed to reconcile Dr. Lee's opinion that [Claimant] would have moderate limitations in prolonged standing and prolonged sitting with her RFC finding for light work with no additional sitting, standing, or walking limitations." (Dkt. 11-1 at 19-20). The Court disagrees. "[M]oderate limitations . . . are frequently found to be consistent with an RFC for a full range of light work." *Gurney v. Colvin*, No. 14-CV-688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016); *see also Bethany A. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1267

(WBC), 2022 WL 170405, at *4 (W.D.N.Y. Jan. 18, 2022) ("[C]ourts within the Second Circuit have found . . . a doctor's assessment of "mild" and "moderate" limitations supportive of an RFC for light work.") (collecting cases).

Where a consultative examiner identifies moderate limitations, it is appropriate for the ALJ to review the accompanying examination findings to make an RFC determination. *See Gabrielle C. v. Comm'r of Soc. Sec.*, No. 21-CV-00567-LJV, 2023 WL 5200159, at *2 (W.D.N.Y. Aug. 14, 2023). That is precisely what the ALJ did here, explaining that Dr. Lee's physical examination of Claimant showed intact gait, strength, and sensation. ( Dkt. 5 at 18; *see* Dkt. 4 at 1254 (Dr. Lee's examination records further showing full squat, the ability to walk on heels and toes without difficulty, and normal stance)). The ALJ thus reasonably interpreted Dr. Lee's finding of moderate limitations in prolonged standing and sitting as consistent with the requirements of light work. *See Hayley E. v. Comm'r of Soc. Sec.*, No. 6:22-CV-06530 CDH, 2026 WL 878778, at *5 (W.D.N.Y. Mar. 31, 2026) (finding that ALJ reasonably interpreted consultative examiners assessment of "moderate-to-marked limitations related to standing and walking" as consistent with light work).

Plaintiff's arguments to the contrary essentially amount to a disagreement with the ALJ's interpretation of Dr. Lee's opinion. But "the ALJ's factual findings may be set aside only if a reasonable factfinder would have had to conclude otherwise." *Kessler v. Colvin*, 48 F. Supp. 3d 578, 589 (S.D.N.Y. 2014). It was not unreasonable for the ALJ to conclude that Dr. Lee's assessment of moderate limitations in prolonged standing and prolonged sitting was consistent with an RFC

for a modified range of light work.

In sum, Plaintiff has failed to identify any reversible error in the ALJ's assessment of Dr. Lee's opinion, nor did the ALJ fail to comply with the Court's and the Appeals Council's directives on remand. The Court thus finds no basis to disturb the Commissioner's denial of Claimant's applications.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 11) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

Colleen D. Holland

COLLEEN D. HOLLAND
United States Magistrate Judge

Dated: Rochester, New York
September 18, 2026